IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| SHELLEY GOODSON, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. G-12-010 |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMIN., | § § § § § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Plaintiff Shelley Goodson's action, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1382. A Motion for Summary Judgment was filed by Plaintiff (Docket Entry (Dkt.) No. 10). A Motion for Summary Judgment was also filed by the Commissioner. (Dkt. No. 11). After considering the competing motions, the administrative record, and the applicable law, this Court, for the reasons set forth below, concludes that Plaintiff's Motion for Summary Judgment (Dkt. No. 10) must be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. No. 11) must be **GRANTED**, and that this action must be **DISMISSED**.

1

I. **INTRODUCTION**

Plaintiff Shelley Goodson (Goodson) brings this action pursuant to Section 205(g) of the Social Security Act (Act), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI). (Dkt. No. 1).

II. **THE ADMINISTRATIVE PROCEEDINGS**

Plaintiff Shelley Goodson (Goodson) submitted an application for DIB and SSI benefits with the Social Security Administration (SSA) on July 23, 2009, claiming that she had been disabled and unable to work since April 26, 2006, due to "Copd, lime disease, fibromyalgia, chronic fatigue, NASH and low blood pressure."[1] (Tr.[2] 114-120, 121-123, 149, 241). Goodson, who was approximately 42 years old when she applied for benefits, has her Associate's degree. (Tr. 33). Her past relevant work included working as an administrative assistant, a cashier, a housekeeper, a massage therapist and an insurance agent. (Tr. 59-60). Goodson's applications were denied upon initial review and also upon reconsideration. (Tr. 69-74, 75-78).

Goodson requested, and was granted, a hearing before an administrative law judge (ALJ). A hearing was held on February 16, 2010. (Tr. 27). Goodson was represented by counsel at the hearing. (Tr. 27, 29). During the hearing the ALJ heard testimony from Goodson, a medical expert and a vocational expert (VE). (Tr. 27-64). After considering the evidence, the ALJ issued a written decision on March 12, 2010, in which he made the following findings:

    1.    The claimant meets the insured status requirements of the Social

---

[1] "NASH" appears to refer to non-alcoholic steatohepatitis (*i.e.*, liver inflamation caused by buildup of fat in the liver).

[2] "Tr." refers to the transcript of the administrative record.

2

> Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since April 26, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following medically determinable impairments: sinus tachycardia and emphysema (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
>
> 4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
>
> 5. The claimant has not been under a disability, as defined in the Social Security Act, from April 26, 2006 through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

Accordingly, the ALJ denied Goodson's application for benefits. (Tr. 22-23).

Goodson's attorney appealed the decision to the Appeals Council of the SSA's Office of Hearings and Appeals and submitted additional evidence in support of her appeal. (Tr. 7-10). On January 18, 2011, Goodson's request for review was denied, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4-7).

After the Commissioner's decision became final, Goodson filed a complaint in federal court on January 13, 2012, seeking review of the administrative decision. (Dkt. No. 1). Competing Motions for Summary Judgment were then filed by the parties. (Dkt. Nos. 10, 11). In her Motion, Goodson maintains substantial evidence does not support the ALJ's decision because he failed to properly consider evidence in the record that her mental impairment (depression) was a medically determinable impairment that resulted from the limiting effects of her physical impairments. (Dkt. No. 10 at 10). Goodson also requests the Court to remand the case so that

the ALJ can consider "new evidence." In her Motion, the Commissioner maintains that substantial evidence supports the Commissioner's decision, that it comports with applicable law, and that it should therefore be affirmed. (Dkt. No. 11). The Commissioner also argues that remand to consider Goodson's "new evidence" is not warranted. (*Id.*). The parties' competing Motions for Summary Judgment are ripe for adjudication.

## III. JUDICIAL REVIEW OF ADMINISTRATIVE DETERMINATIONS

### A. Standard of Review

A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing." 42 U.S.C. § 405(g) (2000). Substantial evidence is defined as being more than a scintilla and less than a preponderance and of such relevance that a reasonable mind would accept it as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Brown*, 192 F.3d at 496.

### B. Burden of Proof

An individual claiming entitlement to DIB and SSI under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe as to limit the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A) (2000). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)(quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, [s]he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not

5

disabled" must be made; and

5. If the claimant's impairment prevents [her] from doing any other substantial gainful activity, taking into consideration h[er] age, education, past work experience, and residual functional capacity, [s]he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

Under this five-step sequential process, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

## IV. DISCUSSION

### A. Consideration of Goodson's "Depression"

The sole issue in this case is whether remand is warranted because the ALJ failed to discuss Goodson's "depression" and, according to her, the "obvious adverse impact on her potential ability to maintain and sustain full-time competitive employment" when he determined that Goodson was not disabled. (Dkt. No. 10 at 4, 10). The Court, having considered all the evidence in this case,[3] concludes remand is not warranted for several reasons.

The Court initially notes that this action appears to be the first time that Goodson has ever asserted that she had a mental impairment (depression) that prevents her from being able to work.

---

[3] The administrative record consisted of documents and medical records exceeding 600 pages.

6

It is clear that she did not list any mental impairment in her application for benefits. (Tr. 149, 177, 186). On the contrary, in her July 23, 2009, application for benefits, Goodson answered "No" to the question asking "[h]ave you been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems *that limit your ability to work?*" [Emphasis added]. (Tr. 151). Goodson also listed her medications, along with the reason she was taking each, and none were prescribed to her for any emotional or mental problems. (Tr. 154, 191). *Cf. Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (an ALJ is not precluded from relying upon the lack of treatment as an indication of non-disability); *Johnson*, 864 F.2d at 348 (impairments that reasonably can be remedied or controlled by medication or treatment are not disabling). Although the Court observes that Goodson did report in her Work History that she "lacked energy, was unable to concentrate and focus and that 'stress was not her friend'" (Tr. 164, 170), the ALJ clearly addressed these alleged symptoms in his decision. (Tr. 18 (*e.g.*, the ALJ expressly recognized that Goodson claimed numerous symptoms, which included, but were not limited to, lack of energy, fatigue and anxiety)). Nor did Goodson, who was represented by an attorney, allege a mental impairment (depression) before, during or after the February 2010 hearing before the ALJ. (Tr. 27; 40-47). Instead, the administrative record merely reflects that Goodson's attorney, while appealing the ALJ's decision to the Appeal's Council, did so on other, unrelated grounds. *See Leggett*, 67 F.3d at 565 (concluding that ALJ's failure to consider a claimant's alleged mental impairments was not improper when the claimant never raised the issue of mental impairments until his appeal to the Court of Appeals, and, although the record contains references to anxiety, stress, and depression, those comments were isolated, and the claimant was not treated for those conditions); *Dominque v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (concluding no error occurred when claimant did not raise depression as an impairment at the administrative

7

level and on appeal "pointed to no evidence indicating that the alleged depression affected her ability to work"); *Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (no evidence that an alleged mental impairment was disabling that "precluded him from seeking gainful employment"); *see generally, Pope v. Colvin*, No. 4:13-CV-473-Y, 2014 WL 1724766, at *4 (N.D.Tex. May 1, 2014) (finding no error occurred when the ALJ failed to consider isolated comments in the records concerning claimant's vision when claimant did not mention vision impairment in his application and did not raise the issue until after the ALJ rendered a decision).

Nevertheless, upon seeking judicial review, Goodson now argues that remand is warranted because there is no indication that the ALJ considered her "depression" and the "obvious adverse impact" it had "on her potential ability to maintain and sustain full-time competitive employment." (Dkt. No. 10 at 4, 10). Inevitably, the burden rests with Goodson to prove that she was disabled.[4] *Johnson*, 864 F.2d at 344. Although, perhaps, the ALJ should have included references to "depression" in his findings, as he did had done with Goodson's complaints of lack of energy, fatigue and anxiety (Tr. 18), his failure to mention the word "depression" does not mean he failed to consider its manifestations, if any. *See Hammond v. Barnhart*, 124 Fed.Appx. 847, 851 (5th Cir. 2005); *Copenhaver v. Astrue*, No. A-09-CA-838-SS, 2011 WL 891617, at *4 (W.D.Tex. March 11, 2011); *see also, Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (recognizing procedural perfection in administrative proceedings is not required). On the contrary, the ALJ's decision reflects that he considered all of the evidence in the record, which included sporadic notations from some of her physicians that Goodson either reported or appeared depressed.

---

[4] With regard to Goodson's application for disability insurance, she bears the burden of proving that she was disabled ***prior*** to the expiration of her insured status, which was December 31, 2010. (Tr. 16).

8

Nevertheless, Goodson had not been diagnosed with depression by a psychologist or a psychiatrist;[5] nor had any doctor who saw her ever hospitalize or prescribed any medication for her depression. (Tr. 191, 575).

Although it is evident Goodson attended several counseling sessions at the Four C's Clinic,[6] it is clear that the assessments formulated by the LCSW (licensed clinical social worker) were predicated on Goodson's own, unsubstantiated reports that she suffered from dire medical conditions. (*See* Tr. 17-20). Aside from this, the records before the ALJ reflect that Goodson's counseling sessions were fairly limited in course and scope. For example, the records reflect that Goodson attended approximately four (4) counseling sessions in April 2008 (Tr. 490-493); more than a year later, she attended approximately six (6) counseling sessions from late September to early November 2009 (Tr. 450-456); and then it appears she attended monthly sessions from January through July of 2010. (Tr. 545-546, 554, 565, 569, 571). The records also reflect that Goodson's counselor, providing nothing more than "empathetic support," considered her symptoms or difficulties to be nothing more than borderline mild.[7] *See Randall v. Astrue*, 570 F.3d 651, 662-63 (5th Cir. 2009) (ALJ entitled to rely on clinical findings which reflected that claimant "suffered from only "mild/borderline" adaptive retardation and that her impairments

---

[5] See *Pierce v. Astrue*, No. 2:11cv343-WC, 2012 WL 1231876, at *3-4 (M.D. Ala. 2012) (ALJ did not err in failing to consider and evaluate a mental impairment that claimant never alleged and which no treating physician or qualified examiner ever diagnosed or which affected her ability to work).

[6] The records reflect that Goodson began seeing Dr. Alhassan on March 11, 2008 (Tr. 496-503) and, shortly after her initial visit, Dr. Alhassan referred Goodson to counseling sessions. (Tr. 321, 324).

[7] The LCSW assessed Goodson's GAF as 60. A GAF score represents a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed. 2000) at 32. A GAF scores in the range of 61-70 indicates mild symptoms or some difficulty, but, on the whole, indicates that the individual is generally functioning pretty well with meaningful interpersonal relationships.

9

'would not preclude gainful competitive employment.'"); *see also, Shave*, 238 F.3d at 596 (concluding that ALJ did not err in determining that the plaintiff did not suffer from a disabling mental impairment—despite being treated for two weeks for mental issues—when the record reflected no more than slight impairment in social occupational, or school functioning); *Lopez v. Astrue*, 854 F.Supp.2d 415, 426 (N.D.Tex. 2012) (concluding that nothing in the record supported claimant's contention that the ALJ should have considered his anxiety as an impairment when there is no indication in the records that the effect of the alleged symptoms was anything more than slight). Finally, the ALJ was entitled to rely on evidence from Goodson's own treating physician, Dr. Alhassan, which tends to bolster this conclusion. In particular, despite being the physician who referred her to counseling and continued to oversee her care, Dr. Alhassan made no mention of Goodson's alleged mental impairment when he answered interrogatories and submitted a medical source statement concerning her impairments. (Tr. 496-503). *Cf. Copenhaver*, 2011 WL 891617, at *5 (concluding that "[i]f the ALJ did not recognize her depression, as is the case here, it was not error for him to exclude depression from the RFC determination.").

In conclusion, the ALJ's decision, and the presumption that attached to his fact findings and the processes through which he reached those findings,[8] persuade the Court that proper legal standards were adhered to and the Commissioner's decision is supported by substantial evidence.

### B. Request to Remand For Consideration of New Evidence

Goodson requests that the Court remand her case to allow the Commissioner to reconsider

---

[8] *See Wilburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (recognizing that there is a legal presumption that the ALJ properly discharged his official duties and made an appropriate review of the record).

Goodson's disability status in light of "new evidence." (Dkt. No. 10 at 5, Ex. A). The new evidence referred to by Goodson is the March 21, 2011, evaluation performed by a consultative evaluating psychologist, Victor Hirsch, Ph.D, who diagnosed Goodson with "Major Depression - Acute." (Dkt. No. 10, Ex. A).

It is well-established that a court may not issue factual findings on new medical evidence and may review such evidence only to determine if remand to the Commissioner is appropriate. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1999). A court may remand for consideration of new evidence only upon showing by the claimant that (1) there is "new" evidence; (2) the evidence is "material"; and (3) good cause exists for the claimant's failure to present the evidence at the administrative level in a prior proceeding. *Castillo v. Barnhart*, 325 F.3d 550, 553 (5th Cir. 2003); *Ripley*, 67 F.3d at 555; *Leggett*, 67 F.3d at 566-67. The Court concludes that remand is not justified in this case. Although the evidence might be new, Goodson has not shown that the evidence is material. *Ripley*, 67 F.3d at 555, n. 14 (evidence is not "material" where it does not relate to the time period for which the benefits were denied *or* is merely evidence of a deterioration of a previously non-disabling condition when the deterioration occurred after the period for which the benefits were sought); *see also, Jones v. Callahan*, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (upholding district court's decision not to remand because new evidence claimant sought to introduce on remand was not material because "it does not relate to the time period for which the benefits were denied"). Instead, the "new evidence" Goodson seeks to present is an evaluation which was performed more than a year after the ALJ issued the unfavorable decision in this case and which indicates a subsequent deterioration of a previous non-

disabling condition.[9] Nor has good cause been shown for the failure to incorporate this matter previously. *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987); *see also*, *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) ("[t]he mere fact that a medical report is of recent origin is not enought to meet the good cause requirement."). As discussed, despite being represented by an attorney at the hearing and before the Appeals Council, Goodson never raised the issue of severe and disabling depression. (Tr. 27, 192-94). Instead, it was not until after that decision was final and her subsequent application proved successful, that Goodson's new attorney for purposes of this judicial review raised the issue of her severe and disabling depression. This will hardly suffice, however, in satisfying the "good cause" requirement. *See, Geyen v. Sec. of Health and Human Servs.*, 850 F.2d 263, 264 (5th Cir. 1988) (good cause is not satisfied when the claimant "acquires a new lawyer with a new idea."). The Court, therefore, declines to order a remand to the Commissioner for the consideration of this evidence. *Bradley*, 809 F.2d at 1058.

## CONCLUSION

Considering the record as a whole, this Court concludes that proper legal standards were adhered to and the Commissioner's decision is supported by substantial evidence. Accordingly, it is the **ORDER** of this Court that the Plaintiff's Motion for Summary Judgment (Dkt. No. 10) is **DENIED**, that the Defendant's Motion for Summary Judgment (Dkt. No. 11) is **GRANTED**, and that this action is **DISMISSED**.

**DONE** at Galveston, Texas, this ____ day of October, 2014.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

---

[9] Unlike the prior evaluations, the March 21, 2011 evaluation reflects a decline (*e.g.*, Goodson is now taking diazepam (valium) and her GAF score declined sharply). (Dkt. No. 10, Ex. A).